IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE 1001 WL, LLC, | § | NO. 1:24-CV-868-DAE |
| | § | |
| Appellant/Debtor, | § | |
| | § | |
| vs. | § | |
| | § | |
| TIG ROMSPEN US MASTER MORTGAGE, LP, | § | |
| | § | |
| Appellee. | § | |
| _____ | § | |

ORDER DENYING APPELLANT'S OPPOSED EMERGENCY MOTION FOR
STAY PENDING APPEAL

Before the Court is Appellant/Debtor 1001 WL, LLC's ("Appellant" or "1001") Opposed Emergency Motion for Stay Pending Appeal. (Dkt. # 4.) The Court, having considered the motion, the response, the record, and the relevant legal authorities, finds the motion should be **DENIED**.

BACKGROUND

Central to this dispute is property located at 1001 West Loop South, Houston, Texas (the "Property"). On March 11, 2024, 1001 initiated an Adversary Proceeding in the Bankruptcy Court against Appellee TIG Romspen US Master Mortgage, LP ("Appellee" or "Romspen"), Galleria Loop Note Holder, LLC ("Galleria"), and BDFI, LLC ("BDFI"). This appeal follows from that proceeding.

Debtor 1001 first acquired the Property on January 18, 2017; the Property was conveyed to the Debtor by special warranty deed signed on January 26, 2017.  (Dkt. # 4 at 2.)  The conveyance was made subject to existing liens on the Property.  At the time of the conveyance, the following liens encumbered the Property: (1) deed of trust in favor Mid First Bank, recorded on February 12, 2012, securing a debt in the amount of $18,900,000; (2) deed of trust in favor of Mid First Bank, recorded on August 21, 2014, securing a debt in the amount of $21,150,000; (3) deed of trust in favor of Kolee 59 Trust, recorded on February 8, 2017, securing a debt in the amount of $2,758,600; and (4) deed of trust in favor of George M. Lee, recorded on February 8, 2017, securing a debt in the amount of $2,758,600.  (Id. at 2–3.)  On June 28, 2018, Kolee 59 Trust assigned its lien to BDFI by instrument recorded on August 13, 2019.  (Id. at 3.)

On May 28, 2019, Galleria was formed as a Texas limited liability company, with Romspen as its managing member.  (Dkt. # 4 at 3.)  In connection with the formation, Galleria, Romspen, and Ali Choudhri ("Choudhri") executed a "Member Interest Option Agreement" (the "Option") which provided Choudhri with the option to obtain Romspen's Member Interest in Galleria.  (Id.)  On May 31, 2019, Romspen made an $18,500,000 loan to Galleria to acquire the Mid First Bank notes and deeds of trust.  (Id.)  As part of the loan agreement, it was provided that Romspen, the Lender, would have a priority lien and deed of trust "free and

2

clear of any and all other liens, immediately upon [Galleria] succeeding to ownership of the Property." (Dkt. # 4 at 363.) According to 1001, this structure was part of a "note-on-note" transaction which set a structure by Romspen for Galleria to obtain title through a foreclosure of the Mid First Bank debt and a sale to Galleria through the foreclosure. (Id.) Thereafter, on May 30, 2019, Mid First Bank assigned its notes and deeds of trust to Galleria by instrument recorded on June 4, 2019. (Id.)

On September 3, 2019, Galleria, as the owner and holder of the Mid First Bank notes and deeds of trust, conducted a foreclosure sale of the Property through Kamelia Namazi-Momin, the trustee selected by Choudhri to conduct the foreclosure. (Dkt. # 4 at 364–65.) After this foreclosure sale, Namazi-Momin recorded the trustee deeds of the Property to Galleria. (Id. at 365.) At this point, Choudhri owned Galleria in its entirety and Galleria owned the Property per the foreclosure sale, with Romspen holding a first priority lien on the Property. (Id.)

In the months following the foreclosure sale, Namazi-Momin recorded as many as six additional trustee's deeds attempting to resolve perceived defects in the original trustee's deeds. (Dkt. # 4 at 365.) After the recording of these deeds, George Lee, a junior creditor whose lien was extinguished by the September 2019 foreclosure sale, filed two state court lawsuits challenging the validity of the foreclosure sale. (Id.) Ultimately, the state court found that the

September 2019 foreclosure sale was valid, which was affirmed on appeal. (Id. at 365–66.)

Following final judgment in the state court lawsuit, Galleria continued to operate the Property; in May 2021, Galleria struggled to stay current on its loan obligations to Rompsen. (Dkt. # 4 at 367.) The parties negotiated multiple forbearance agreements but the relationship between Rompsen and Choudhri began to sour, with Galleria filing several lawsuits against Rompsen. (Id.) On January 22, 2024, Choudhri, still the owner of Galleria, executed a deed of trust transferring the Property from Galleria back to 1001; Choudhri signed the deed pursuant to his role as the sole managing member of Galleria. (Id.)

On February 2, 2024, Choudhri, as the owner of Galleria, executed a purported rescission of the September 2019 foreclosure sale that had occurred almost five years' prior. (Dkt. # 4 at 367.) Four days later, on February 6, 2024, Choudhri placed 1001 into bankruptcy, signing 1001's original petition. (Id.) On March 11, 2024, 1001 filed the Adversary Proceeding requesting the bankruptcy court determine the validity and extent of Romspen's lien on the Property and, in the alternative, seek equitable subordination of Romspen's lien to Galleria's purported lien. (Id.)

On July 23, 2024, the bankruptcy court determined, in relevant part, that the summary judgment evidence conclusively established that: (1) 1001 is

4

judicially estopped from contesting the validity of the September 2019 foreclosure sale and/or Romspen's lien; (2) in the alternative, 1001 is estopped by the doctrine of quasi-estoppel from attacking the validity of the September 2019 foreclosure sale and/or Romspen's lien; (3) the Rooker-Feldman doctrine does not apply to the Adversary Proceeding; (4) there is no basis under Texas law for statutory rescission of a foreclosure sale involving commercial property; and (5) equitable subordination is not appropriate.  (Dkt. # 4 at 357–84.)  Thereafter, in its final judgment entered on July 26, 2024, the bankruptcy court found in favor of Romspen and 1001 is estopped from attacking the validity of the September 2019 foreclosure sale and/or the validity of Romspen's lien on the Property.  According to 1001, the effect of the bankruptcy court's final judgment is that Romspen holds a valid deed of trust on the Property.  (Id. at 1.)

After the bankruptcy court's final judgment, 1001 contends that Romspen has listed the Property for a foreclosure sale to be conducted on September 3, 2024.  (Dkt. # 4 at 2.)  On August 1, 2024, 1001 filed an emergency motion for stay pending appeal in the bankruptcy court, which was denied following a hearing.  (Id. at 390.)  Now before the Court is 1001's emergency motion for stay pending appeal filed on August 28, 2024, principally seeking to prevent the September 3, 2024, foreclosure sale of the Property.  (Id.)  Rompsen

filed its response in opposition on August 30, 2024.  (Dkt. # 6.)  1001 filed its reply in support the same day.  (Dkt. # 8.)

## LEGAL STANDARD

Pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, a party seeking a stay of a bankruptcy court judgment or order must first move in the bankruptcy court for relief before appealing to the district court.  Fed. R. Bankr. P. 8007(a)(1)(A).  Rule 8007 also provides that a motion for a stay may be made in the district court where the appeal is pending.  Id. 8007(b)(1).  In the district court, the stay motion "must . . . either state that the [bankruptcy] court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling."  Id. 8007(b)(2)(B) (emphasis added).  "Must" means "shall." A party is required to set out any reasons given by the bankruptcy court for its ruling.  Further, "the motion must also include: (A) the reasons for granting the relief requested and the facts relied upon; (B) affidavits or other sworn statements supporting facts subject to dispute; and (C) relevant parts of the record."  Id. 8007(b)(3)(A)–(C) (emphasis added).

A stay pending an appeal is an extraordinary remedy, reserved only for limited circumstances.  Thomas v. Bryant, 919 F.3d 298, 303 (5th Cir. 2019). To obtain a stay a pending appeal, a movant must: (1) make a strong showing that he or she is likely to succeed on the merits; (2) demonstrate that he or she will be

irreparably injured absent a stay; (3) show that the stay will not substantially injure the other parties interested in the proceeding; and (4) establish that the public interest weighs in favor of granting the stay. Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)); see also Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir. 1982); Saldana v. Saldana, No. 3:15–CV–1918–L, 2015 WL 5021415, at *2 (N.D. Tex. Aug. 25, 2015). In the Fifth Circuit, the movant seeking a stay of a bankruptcy court order pending appeal has the burden of satisfying all four requirements. Ruiz, 666 F.2d at 856. However, where the first factor is absent, if and "[o]nly 'if the balance of equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor' will [courts in the Fifth Circuit] issue a stay in its absence, and, even then, the issue must be one with patent substantial merit." Id. at 857 (quoting Ruiz v. Estelle, 650 F.2d 555, 565–66 (5th Cir. 1981) ("Ruiz I")).

The Court is called upon to review both factual findings and conclusions of law made by the Bankruptcy Court. The decision to deny a stay is reviewed on an abuse of discretion standard. In re Barrier, 776 F.2d 1298, 1299–1300 (5th Cir. 1983). A bankruptcy court abuses its discretion if it seriously errs in its determination that the moving party has established its case for a stay/injunctive relief. Id. Its findings of fact are reviewed on a "clearly erroneous" standard. In re First South Savings Ass'n, 820 F.2d 700, 711 (5th Cir. 1987). A finding is

7

clearly erroneous if "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Conclusions of law are reviewed de novo. Although no factor is dispositive, the likelihood of success and irreparable injury factors are deemed most critical. Alliance for Hippocratic Medicine v. FDA, 2023 WL 2913725, at *4 (5th Cir. 2023). To prevail on either, the movant must make a "strong" not merely "possible" showing. Id. (quoting Nken, 556 U.S. at 434).

## DISCUSSION

As noted above, 1001 presented its request for stay to the bankruptcy court. The Court first finds that 1001 has met the initial requirements cited above of Rule 8007 and will turn to the merits of the motion, considering each of the factors above.

A.   Success on the Merits

The Fifth Circuit has held that "on motions for stay pending an appeal the movant need not always show a 'probability' of success on the merits" but "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." Ruiz I, 650 F.2d at 565. Here, 1001 has neither demonstrated that a "serious legal question is involved" nor shown that the balance of equities

weighs in its favor, as required to trigger the "substantial case" standard. Nevertheless, under either standard—"substantial case" or "probability of success"—1001 fails.

      1001 and Romspen's arguments in the briefing on the instant motion are mostly repetitive of the substantive briefing in the underlying appeal. Thus, without more, 1001 does little to prove the likelihood of success on appeal. The bankruptcy court premised its decision finding in favor of Romspen after considering the record and holding a hearing in which the bankruptcy court heard testimony and considered evidence. On appeal, 1001 again challenges the factual findings of the bankruptcy court that 1001 was judicially estopped or quasi-estopped from arguing the September 2019 foreclosure sale was void. (Dkt. # 4 at 5.) 1001 attempts to raise a new argument that the bankruptcy court was required to make an alter ego finding before applying judicial estoppel–the bankruptcy court rejected this argument however because there was no basis in the law for such a finding. 1001 also challenges the bankruptcy court's findings that Galleria could not unilaterally rescind the foreclosure sale. (Id.) In deciding the motion to stay, however, the bankruptcy court again considered and rejected these same arguments.[1] (Dkt. # 4 at 397.)

---

[1] 1001's reply also challenges that the September 2019 foreclosure sale was conducted by a "substitute trustee" who was not actually appointed as the substitute trustee, thus making the foreclosure sale void. (Dkt. # 8.) 1001's only

The findings of fact of the bankruptcy court are subject to the clearly erroneous review by the district court. In re Jack/Wade Drilling, Inc., 258 F.3d 385, 287 (5th Cir. 2001). This standard of review makes 1001's likelihood of success slim. Additionally, Romspen's response points to numerous pieces of evidence in the bankruptcy record that support the findings of the bankruptcy court. (See Dkt. # 6 at 5–12 (citing evidence in both bankruptcy case and adversary proceeding).) Accordingly, the Court finds that 1001 has not established a substantial likelihood of success on appeal.

B.   Irreparable Injury

1001 contends that it will be irreparably harmed if the stay is not granted. (Dkt. # 4 at 5.) 1001 asserts that a lack of stay would result in foreclosure of all of 1001's real property holdings by Romspen, which is 1001's primary asset. (Id.) The bankruptcy court held that there is no irreparable harm where the property at issue is commercial as opposed to an individual's business or home, and that the Debtor had not shown that irreparable harm would occur if the court did not grant the stay. (Id. at 399–400.)

---

purported evidence in support is a declaration from a title company examiner which includes a "Nothing Further Certificate" from the relevant time period of the foreclosure, which indicates that Namazi-Momin executed several trustee's deeds and correction deeds but does not show he was appointed as a substitute trustee. (Dkt. # 4 at 13.) This evidence, without more, does not indicate to the Court a substantial likelihood of success on appeal.

10

As Romspen discusses in its response, although courts have found that foreclosure of real property can sometimes constitute an irreparable injury, courts have also distinguished between commercial property and residential property in this regard.  For instance, where "the harm of losing one's home 'is obvious' to the Texas courts, they have been less likely to identify irreparable harm in the loss of the commercial property."  First Security Bank v. W&W Farms, Inc., No. 19-CV-91-Z, 2020 WL 570814, at *11 (N.D. Tex. Feb. 4, 2020) (citing Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 474 (5th Cir. 1985).  And, "[w]hat counts for the Texas courts in commercial land foreclosure cases it not so much the magnitude of the loss but rather the "irreparability" of the loss."  Id.

Along those lines, an "injury is 'irreparable' only if it cannot be undone through monetary remedies."  Enterprise Int'l, 762 F.2d at 474.  "Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."  Morgan v. Fletcher, 518 F.2d 236, 240 (5th Cir. 1975).  Thus, the movant also must demonstrate that such injury "cannot be undone through monetary remedies."  Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 279 (5th Cir. 2012) (quoting Interox Am. v. PPG Indus., Inc., 736 F.2d 194, 202 (5th Cir. 1984)).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the

11

ordinary course of litigation, weigh[]s heavily against a claim of irreparable harm." Enterprise Int'l, Inc., 762 F.2d at 474 (quoting Morgan, 518 F.2d at 240).

Given the above, the Court finds that 1001 has failed to demonstrate that irreparable injury will occur should the Property be foreclosed given that it is commercial in nature and that corrective relief in the form of money remedies is available if necessary.

C. Harm to Other Parties

Appellant must demonstrate that a stay pending appeal will not substantially harm the other parties. Yeckel v. Cunningham, No. 3:11-CV-047-B, 2011 WL 1252753, at *1 (N.D. Tex. Apr. 4, 2011). In the bankruptcy context, a "significant delay in the administration of an estate, or a delay in the distribution to creditors under a plan generally satisfies the criterion of harm to other parties." In re Dernick, 2019 WL 236999 at *4 (Bankr. S.D. Tex. Jan. 16, 2019).

The bankruptcy court found this factor neutral or weighing slightly against the Debtor. (Dkt. # 4 at 400.) The bankruptcy court determined that 1001 had no ability to post any substantial supersedeas bond to protect Romspen, and that Romspen has been delayed in its foreclosure of the Property multiple times, which would further delay the pendency of appeal. The Court agrees with this assessment. 1001 has failed to demonstrate or offer any new arguments in opposition to this factor in its motion before this Court that Romspen would not

suffer any harm should the stay be granted. Accordingly, the Court finds this favor weighs against granting the stay.

D.     Public Interest

The fourth prong considers whether the public interest will be served by a stay. 1001 argues that there does not appear to be any real public interest involved in this case as the matters are solely between the disputes of 1001 and Romspen. (Dkt. # 4 at 7.) In response, Romspen contends that granting a stay "would disserve the public interest by rewarding Choudhri's gamesmanship and calling 'the integrity of the judicial system' into question." (Dkt. # 6 at 15.)

Here, the Court finds the bankruptcy court correctly determined that this case involves a private transaction and thus the dispute's impact is likely to be minimal. Thus, this factor is neutral in this analysis and does not weigh in favor of either party.

E.     Balancing of Factors

Upon balance, the Court finds that 1001 did not establish that the four factors to consider weigh in its favor. Accordingly, the Court will not grant the extraordinary remedy of a stay pending appeal in this case.

## CONCLUSION

In light of the foregoing, the Court **DENIES** 1001's Opposed Emergency Motion for Stay Pending Appeal. (Dkt. # 4.)

14

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, August 30, 2024.

_____
David Alan Ezra
Senior United States District Judge